All right, our second case is Buettner-Hartsoe v. Baltimore Lutheran High School Association. We have several lawyers to hear from today, but we'll start with Mr. Viola. Thank you, Your Honor. Greg Viola on behalf of Appellant Concordia Prep. The issue in this case is whether 501c3 tax-exempt status constitutes federal financial assistance such that Title IX applies to an entity such as Concordia Prep. And the answer is no. And the reason is no is Title IX is spending clause legislation, which the Supreme Court said over 40 years ago is in essence a contract. It's a contract between the government and recipient of federal funds, such that in exchange for those funds, the recipient agrees to be bound by the terms of the contract. Counsel, can I ask you, and I know your brief really emphasizes this clear notice, contract, understanding of spending clause legislation. Is your position that this is an ambiguous statute and therefore you win under this clear notice rule? Well, I would suggest— Do you think the statute is ambiguous? There is an ordinary plain meaning of assistance that would be financial grants. And in the statute itself, it talks about grants, loans, or contract, which certainly doesn't include a tax exemption. But it would be ambiguous, so you'd need to look at other— I'm sorry, so it is ambiguous or it's not ambiguous? Well, I think that it would be—what constitutes federal financial assistance would be ambiguous. You think it's ambiguous? Okay. Why do you think it's ambiguous? It lists out what constitutes federal financial assistance. Yeah, let me backtrack on that. I misspoke. I don't think that it is ambiguous because in the statute, it talks about what constitutes federal financial assistance, meaning grants, loans, and contracts. And then the regulations also define what is federal financial assistance, and it doesn't include tax-exempt status very clearly. So I apologize, Your Honor. I misspoke about that. No, I'm just trying to understand your argument. So do you need this clear notice requirement to win the case? No. It sounds like you don't. We don't. Okay. And either way, the district court must be reversed. Because to have a contract, basically, there has to be a meeting of the minds. They have to agree that Concordia Prep took the money and, in exchange, knew that it was bound by the terms and the constraints of Title IX. And they clearly didn't do that. The plaintiff or the appellees' argument, they don't even argue that it's clear and unambiguous that tax-exempt status is federal financial assistance. That's not even in their argument. But they're forced to agree that. Well, I think they did argue it was federal financial assistance in an indirect way, as in Grove City, based on the charitable donations. Right. But my point was a little different, that they're not. I think that they're saying that they haven't argued in their brief that I'm aware that it's clear and unambiguous. In fairness, you didn't argue that it was clear and unambiguous either. So we're kind of in this weird thing where both parties are focused primarily on this clear notice rule and assuming it's ambiguous. Understood. But in terms of Grove City, Grove City is different than the case at hand. Grove City involved a financial grant that started in the coffers of the U.S. government and ended up at Grove City College. That's undisputed. And in the Grove City case, they looked at the regulations as well as the legislative intent. And they said in the regulations it was very clear that grants constituted federal financial assistance. There was no question about that. And in the legislative intent, they said that it was clear that these monies were intended to go to schools. These grants could have gone directly from the government to the school or they could have gone through an intermediary of the student. And that's basically what the court said, that it was no different if it went through an intermediary or it went directly to the school. So it's the same thing. It's a financial grant just going through an intermediary, which is night and day different than a tax exemption, which is a withholding of a burden. Basically, you don't have to pay back what is already your money. But the effect, I mean, you don't dispute, right, that the effect of a 501c3 tax exemption is pretty much the same as the effect of a cash subsidy. The Supreme Court has said that, that the effect is the same. I don't dispute that it's an economic benefit. And we said in our Bob Jones decision, our circuit, we described a grant of tax-exempt status as conferring upon the institution a monetary benefit that constitutes a form of government support. So if an institution has had conferred upon it a monetary benefit by the federal government, in what sense has it not received federal financial assistance? Well, Bob Jones is different because— Well, I know, but I'm just saying this is language from our court's decision, by which we are bound as a panel. So I need you to distinguish for me conferring upon an institution a monetary benefit that constitutes a form of government support, that's one thing, and the receipt of federal financial assistance is something different. Right. The difference is that Bob Jones dealt with the situation as to whether the government was going to give a tax exemption, whether Bob Jones was entitled to a tax exemption, which is a different standard. It doesn't involve the contractual standard. I do understand that the question in the cases was different. So is your answer to me, well, because the context of that case was different, you need to read the language in that context, and it would not be binding in this different context. Yes, that's what it would be, because it is in a different context, in the context of whether an entity should have a tax exemption, and the court said, in essence, that entities that have racially discriminatory policies shouldn't have tax-exempt status. But that's a different analysis than we're talking about here. And as I said before, the appellees are forced to concede that there's clear Supreme Court case law that says that the contract analogy applies to whether conduct is prohibited and what remedies are available. So they can't deny that. The court has been clear to say that in those instances, the recipient of federal funds, in this instance, they're arguing would be tax-exempt status, have to be aware of those things. But the problem that that creates, they try to get around that. They say, well, the contract analogy doesn't apply at all as to whether the statute applies in the first place. And that is a distinction that doesn't exist, and it can't exist, because the two analysis are intertwined. If you're going to look at what is prohibited, what conduct is prohibited, and what remedies are available, you have to first presuppose and presume that the statute applies. Can I ask you just a very technical question about the posture of this case? I think, and tell me if I'm wrong, there are five plaintiffs, right? There were, yes. There were, and one of them did attend school while it was receiving federal funds in the form of that, you know, the loans that were given during the pandemic. PPP loans? Yeah. Yes. Okay, so I'm just trying to figure out the posture. So is that plaintiff's case part of this certified appeal? No. So this certified appeal only relates to the four plaintiffs who did not attend school while the school was receiving the PPP loan? I think it relates to the one plaintiff, the Hartzell plaintiff. It's just the one plaintiff? No. Okay. So I don't have to worry about that one plaintiff? No. Okay. Got it. Thank you. So, and this is a very high standard. The clearly unambiguous standard is a very high standard, and there's not a lot of case law as to whether federal financial assistance includes tax-exempt status, and the reason why is it is a very high standard. It's got to be unambiguous. It has to be clear. Either it's obvious or it's not, and if it's not obvious, then— So we're back to arguing the statute's ambiguous, but you went under clear notice. I just want to understand your position. Okay. Okay. Unless the Court has any questions, I don't have anything else. All right. Thank you. We'll hear from Mr. Richards. Good morning. I'm Josh Richards from the National Association of Independent Schools, another independent school. I'd like out of the gate to say that the statute is not ambiguous. Federal financial assistance has always been understood and was intended to mean a direct grant from the government to a recipient. So I think the Court can decide the case on that basis. Except what about Grove City that talked about the indirect grant?  I'm not sure why the Court in Grove City or paralyzed veterans or the NCAA case would have had to go into the level of nuanced analysis that it did if nonprofit status alone would have answered the question. Of course, all of the parties at issue in that case were nonprofits, and so the Court went through this detailed analysis about whether or not the indirect provision of assistance to those entities was sufficient. Isn't that the distinction, that it's receiving federal funds by indirect means versus, in this case, receiving an indirect benefit? I think that is absolutely one of the distinctions, Judge Rushing. Another distinction is that, again, if the nonprofit status answered the question alone, the IRS could have revoked Bob Jones's 501c3 because they failed to comply with Title VI, but they didn't. But there we didn't have aid or indirect aid, and the question is not answered solely by reference to the nonprofit status of the entity. Then we're looking at what the nature of the grant is, and if we have to look at the nature of the grant, then the 501c3 status alone can't answer the question. So the Supreme Court has implicitly said over and over again that this doesn't answer the question. With respect to the point that the Court asked about the impact of this, I want to draw the Court's attention to really the seismic impact that this is going to have on nonprofits. There is no intellectual distinction between independent schools and churches and youth soccer clubs and theater groups and tax literacy organizations when it comes to this proposed rule. That means that we have to assume that when every single nonprofit in the country that offers any kind of education decided to become a nonprofit, it was on notice and understood, had a meeting of the minds with the IRS, that it was going to take on not just Title IX, but every federal statute that has as its hook federal financial assistance. So by ruling in this case that nonprofit status is sufficient, we are putting churches, synagogues, everybody on the hook for the entire panoply of federal financial assistance. That they would have to comply with Title IX and not discriminate on the basis of sex. So what's wrong with that? Title IX, Title VI, the ACA. Well, it's not that anything's wrong with it, Judge Thacker. Okay. Now, Congress certainly could have made that decision, and we're not here to debate the wisdom. Because all they make is it's like the sky is falling if you have to comply with Title IX. Well, you know, the impact would be significant from a financial perspective and certainly from the perspective of having flexibility, right? Because Title IX, as we've seen over the past 15 years, has evolved from prescriptive regime to prescriptive regime. There's only one way to do this, and it's the way the government says. And that's fine when Congress decides to unambiguously premise taking federal funds out. And what would the financial impact be? How would that be financially detrimental to your clients? Sure. So with respect to Title IX specifically, what we currently have is a set of regulations that was published with a 1,000-page preamble and requires a highly prescriptive legalistic process. And that process now changes every four to eight years, every time we get a new administration. So it would be financially detrimental because you would be subject to lawsuits if you discriminate on the basis of sex? Is that what you're saying? I don't understand the financial detriment. No, we're talking about a compliance cost there, mostly, just that. And we're also talking about a sort of independence cost, right? I mean, we have a wide variety of member organizations within AMICI. They all have sort of different ways that they want to approach these issues. And I think the government has to agree that there are a variety of different ways to solve these problems because the government keeps changing the way that we have to comply. I don't want to cut off your answer if you have more to say in response to the policy question, but to take us back to the statute, your clients would apparently, I guess, under 1686, because they don't receive funds under this Act, they could have sex-segregated living quarters, right? Or they could not, right? They could not. I guess if you receive funds under the Act, you can have sex-segregated living quarters. But because your clients don't receive funds, if we decided that receiving federal financial assistance includes tax-exempt status, then they couldn't have the sex-segregated living quarters, right? I'm not certain about the premise of the question, Judge Rushing. The premise of the question is this. We're talking about what it means to receive federal financial assistance. Another part of Title IX in 1686 says, nothing in Title IX should be construed to prohibit any educational institution receiving funds under this Act from maintaining separate living facilities for the different sexes. So they've carved out. They say, Title IX doesn't let you discriminate based on sex. We carve out that if you receive funds under this Act, you can separate the sexes for living quarters. That's right. They define that as receiving funds under this Act is what matters. Do your clients receive funds under Title IX? They don't receive funds administered by the Department of Education. Right. So shouldn't receive funds under this Act mean the same thing as receiving federal financial assistance? I think it should. I think it should. And if it doesn't, isn't that strange? I think it's very strange. And I see my time is up. May I just answer the question? Sure. I think it's very strange. And in particular, if you look at Section 1682, which talks about the administrative remedies under the statute, now what you're saying is we're going to take a statute that was primarily designed for administrative remedies, and we're going to take an implied right of action and broaden it beyond what was intended by Congress to be administrative remedies through the Supreme Court's implied right of action in canon, and we're going to say there's going to be an even broader right for all sorts of potential civil liability that didn't exist under 1682, which, again, seems like an absurd result under these circumstances.  Thank you. Thank you. We're going to hear from the other side now. Mr. Bashman. Good morning, Your Honors, and may it please the Court. My name is Howard Bashman, and I represent the plaintiffs at Belize. Defendant Concordia Preps sought and obtained 5013C tax-exempt status. It is undisputed on this record that that conferred significant financial benefit. Can the IRS revoke that tax-exempt status to enforce Title IX? I believe that the answer is yes. How? How can it? Point me to the statutory provision where the IRS can enforce Title IX by revoking tax-exempt status. I don't have that answer at my fingertips. Is that under 1682? Because that only allows an agency that's empowered to extend federal financial assistance by way of grant, loan, or contract. But do you think that tax-exempt status is a grant, loan, or contract? Tax-exempt status is the equivalent of a grant under the case law that we're relying upon. Explain that to me. Explain to me how a grant is the same as not taking someone's tax money. Justice Rehnquist in Regan v. Taxation with Representation. Was he interpreting this provision? No, he was not. So you're staking your case on that, that it's a grant. Tax-exempt status is a grant of funds from the federal government. That's your position. That the U.S. Supreme Court has recognized that it's the equivalent. The meaning of 1682 is that the IRS can revoke tax-exempt status because it is a grant to the tax-exempt organization. Correct, Your Honor. And what, again, is your best authority for that argument? The Regan v. Taxation without Representation case, where then-Justice Rehnquist writing for the court, recognized that tax-exemption has the same effect as a tax grant. Is that the one where he said that subsidies and tax-exemptions aren't in all respects identical? I believe that that language is also in there. Okay. But here it's clear that this is a subsidy. Also, the McLaughlin case from the three-judge panel of the District of Columbia, a little question that the tax deduction for charitable contribution is a grant of federal financial assistance. No other circuit court of appeals has held in your favor, correct? No other circuit court of appeals has ever even had this issue before it in 50 years, has it? This is the first court that is directly addressing this issue. The Eleventh Circuit dealt with it tangentially in terms of whether the argument gives rise to federal question jurisdiction. And so that's as close as we get there. No court has agreed with us. No court has disagreed with us at the federal or public court level. Counsel, is your argument that the statute is ambiguous and we should construe it broadly, consistent with Title IX's purposes? Or is your argument that this statute unambiguously treats 501c3 tax exemption as the receipt of federal financial assistance? Our argument is that the statute gives clear notice that 501c3 status would constitute receiving federal financial assistance. But also that Title IX should be construed broadly as Congress has set forth. But so on the clear notice point, assuming if it is unambiguous, if it gives clear notice, I am sort of hung up on the fact that it looks like in 50 years nobody in the federal government has taken that reading of the statute. It doesn't seem to be covered by the regulations that have been in place for 50 years. And tell me if I'm wrong. Has there ever been a federal enforcement action based solely on 501c3 status where that was used as the hook for bringing an entity under Title IX or Title VI or any of the other statutes that use this language? Not that I'm familiar with. That's weird, right, that an unambiguous statute or a statute that puts everyone on clear notice that this is right, that the entire federal government kind of apparatus spanning all different kinds of administrations, nobody would have read it that way. But no one has read it the other way. The other side relies upon snippets from the congressional record. They've definitely read it the other way. This has been defined by over 20 federal agencies. They've defined what federal financial assistance means. It means a grant, a loan, or a contract. You're referring to the regulations now, Your Honor? Yeah, well, in answer to Judge Harris, you said no one's defined it to exclude tax exemptions, but they definitely have. Just to clarify your answer there. Sure. With all respect, we believe that those regulations actually support the argument that we're making today. Because you think a tax exempt status is a grant? It's the equivalent of a grant, correct. And how is that? Because the economic effect is the same as giving money from the federal government's coffer to the charitable organization. I think Grove City is the closest case maybe to your argument where there was an indirect financial assistance based on the student grant. But that was more directly, the money went directly to the university there. Here, to get the money, to get the indirect benefit of the federal financial funds into the coffers of the 501C organization, there are several steps removed. It's not just indirect. It's really, really indirect. Well, with all respect, we disagree with that because one of the benefits of having the tax exempt status is that Concordia Prep doesn't have to pay any tax on its income. And so I believe that the other side would agree that the extra money that it obtains as a result of its tax exempt status, if the tax exempt status did not exist, would then instead be in the coffers of the federal government. Just like Bob Jones and Grove City and the NCAA, right? They all got to not pay taxes on their income, too. No one was arguing in those cases that the 501C status was the hook for applying the federal statutes there. So, again, those cases do not directly decide the issue. But I also want to respond to Judge Harris. Because this is the first one. Again, we're back to we would be the first. Some court, meaning your honors, are deciding this case. And so you are the first. I want to respond back to Judge Harris's question about whether the clear notice requirement even applies to the question of whether a 501C organization is receiving federal financial assistance. As our brief explains, the requirement that conditions must be communicated unambiguously applies to conditions. And so that's something that applies to the recipient once the contract is in existence. And so the conditions consist of what actions violate Title IX, whether the type of relief is sought is available under Title IX. But the communicated unambiguously does not apply to the issue of whether the organization is or is not receiving federal financial assistance. Can you help me find that line? So I was a little confused by this. You're drawing a line between you're saying the Supreme Court has said it has to be clear what the law requires and what damages you're subjecting yourself to and what you can be liable for. But you're saying it doesn't have to be clear whether it applies to you at all. I'm not saying it doesn't have to be clear. What I'm saying is that the holdings of those cases construe the part of the statute that is implying a federal cause of action under Title IX. It's not construing the text of the statute. And so here we have a clear notice requirement that the statute itself satisfies, which says if you're receiving federal financial assistance, Title IX applies to you. So we're not saying that Concordia Prep is not entitled to any notice. However, in Grove City, which was the indirect case, Grove City did everything that it could do to try to avoid being covered by Title IX. But students went out and applied on their own for federal grants. And I guess in response to that, Grove City certified that the student was attending Grove City. And then the students took the federal grants that they got and used it to pay their tuition. And so there are cases that are even less notice to the recipient than this case, because here we have an educational institution that went out. Well, certainly, I mean, Grove City knew that the money was coming into its bank account, and it knew where the money was coming from. From the student. The student got federal money that was then coming into the bank account. And that's the whole point of the lawsuit, right, is Grove City knew that. But if you look at the footnotes of Grove City, it's clear that Grove City refused to sign up for the part of the program that would have caused that money to be paid directly from the federal government to it. Yeah, they thought they could avoid it by not having it come directly. They were trying to avoid it. Yeah, I guess my question is you really seem to be staking a lot on the idea that when the Supreme Court says it has to be clear whether a recipient of federal funds knowingly and voluntarily accepts the terms of the contract, right, the strings that come with those funds, that when they say they have to knowingly and voluntarily accept it, you're saying that doesn't mean that you have to know the strings apply to you. You just have to have a lot of clarity on what those strings are, but it doesn't have to be clear that the strings apply to your money. To be clear, we're saying that the cases that the other side relies upon for that proposition, beginning with Pennhurst and ending with Cummings, which they rely upon most heavily, all involve the conditions that apply to the recipient, not whether the recipient had noticed that it entered into the contract. Yeah, I know that's what those cases stand for, but you're asking us to then extrapolate that that's all that it means, that when the Supreme Court talks about speaking with clarity in spending legislation, it only means the specific issues that were the holdings in those cases. If you read the holdings, which refers to conditions, that's something that applies once you're in the contract. There's a theory that's known as the objective… And it doesn't apply to whether you know you're accepting federal financial aid. Correct. You either are a recipient of federal financial assistance under Title IX or you're not. And there's no extra hoop that needs to be jumped through that shows that the recipient had to have contemplated that they may have been receiving federal financial assistance as a result of doing something. Otherwise, Grove City itself would have come out the other way. And what I was about to say is that there's this doctrine known as the objective theory of contract entry, which is that the subjective mind of the party that is entering into the contract is just irrelevant. And based upon all the authorities that we cite, which is numerous cases, the Walz case, which recognized that tax exemption affords indirect economic benefit. And then, of course, Grove City saying that indirect economic benefit is sufficient. I see my time is almost up, so let me just touch on one other issue, which is… Go ahead. I thought I understood your argument about Grove City. So you're saying Grove City does not refer to this clear notice requirement. And, in fact, until Grove City is decided, it is not clear that getting this indirect student aid is going to bring you under the statute. Correct. Okay. As Your Honor observed earlier, there's also Footnote 7 of this own court's Bob Jones opinion, which supports us, which I didn't mention before. Can I ask you a question about the scope of your position? Is it that all tax exemptions and deductions count as the receipt of federal financial assistance and a grant under Title IX? No. Or is there something special about 501c3? It's not that deductions are relevant. How? I'm sorry? Sorry. We're all dumbfounded at that. How is that possible? It's the same thing as a – it's economically the same, as you like to say. What I'm saying is that, you know, when you figure out the difference between gross income and net income, and that, you know, you can deduct the cost of running your business and only pay taxes on net income. I mean, that's something that's a generally applicable aspect of the tax code without regard to charitable organizations. But your rule in your brief is that they have more money in their pockets than they would have had if the government hadn't given them this special status. And I have more money in my pocket than I would have if the government hadn't let me take a deduction. I don't disagree with that. But this is something that they had to formally go out and obtain and continue to qualify for. You get your deduction as a matter of grace from the government without having to do anything. So why is that not a grant? Well, we have to fill out our taxes and sign the taxes. I think that our brief explains that. I just want to touch very briefly on that. No, it doesn't. We don't think it does. We don't think it does. How is a deduction different from a grant? Yeah, I have to ask for the deduction. I have to sign my tax return and tell the government I'm entitled to this deduction. And that's like if you say that an exemption is a grant, then a deduction is a grant. Right. 5013C status has to be specially applied for and extended by the government to folks who qualify for it. Generally applicable tax provisions that allow a deduction under certain circumstances is to us different. So you think deductions are different than tax credits? A tax credit is definitely something that's extended specifically only to specific people. You can apply for child tax credits, right? Correct. But that is, again, something that the tax code makes available to folks who qualify for it, and all you have to do is put it on your return and say that you qualify for it. This is something that they had to affirmatively reach out and apply for and obtain. So because there are extra forms that they have to fill out to be a 5013C? Because they had to take affirmative steps to enter into this contract themselves. That's the difference you're making? Yes, Your Honor. Okay. Can I just touch briefly on the regulations? I realize my time is up. I don't know, Judge. Do you have another question? I do have one last question on that because I really do want to make sure to try to understand your position on this. I see why, like, maybe the taking the extra steps and getting some kind of special approval might matter over in the notice bucket or for some other theories, but it does seem like your bottom line is that what matters is the effect of the aid, right, and that a 501C3 tax exemption has the same effect as if the government had given you this money. Is there a difference over or under the effect bucket? Is there any difference there between tax credits, deductions, and 501C3 exemptions, or the effect is the same, right? I think the effect can be the same, yes. Okay. Now, what is it you briefly want to talk about? I just wanted to make clear that there's been an argument made by the other side, and it's amici about the regulations that apply, and here it would just be the Treasury Department's Title IX regulations, and they just require three simple things that, in fact, Concordia may already be in compliance with. Designate a responsible employee, adopt and publish grievance procedures, and resolve complaints promptly and equitably. Those are the Title IX regulations that the Treasury Department has promulgated that would apply here if your honors affirm. It's not the Education Department's Title IX regulations. They're not getting a grant from the Education Department. Thank you so much. All right. Thank you. And next up is Mr. Allitt. Thank you, Your Honor. I'm Sean Allitt for amici in support of affirmance. I do want to address the distinction the Court was getting at between the 501c3 tax benefits and other deductions and exemptions. We would draw the same distinction that this Court drew in its Bob Jones decision between 501c3, which is intended as a benefit for organizations that doesn't apply to other entities that are in similar income, and other deductions and exemptions, which are just designed to measure net income under the tax code. And that's consistent with the plain meaning of federal financial assistance. Financial assistance, according to the only dictionary definition cited in the papers, means help relating to finances. 501c3 tax benefits, as this Court held in its Bob Jones decision, are a form of monetary benefit and government support, and they're intended that way, as the Supreme Court explained in Bob Jones. Isn't that how tax credits are intended? Congress decided that they want to help certain groups of people? Yes, Your Honor. In fact, in the Affordable Care Act, it explicitly says that tax credits are a form of financial assistance, and I think that brings us to the Court's question. So you disagree with Mr. Bashman? You think that tax credits would count as federal financial assistance, but you don't think deductions count? I think that certain tax credits could, but I think it's a harder case because you don't have the same history in the Supreme Court case law that makes clear to schools that certain types of tax credits are, in fact, conditioned on schools complying with public policy, including nondiscrimination. So I think that makes it a harder case. And what's the rule that we apply to find out if a deduction or a credit or an exemption is receiving federal financial assistance? First, whether they are intended as benefits that schools receive, and second... What does that mean? Where do I look to find that out? I think, first, you could look to Bob Jones for the rule, which makes a distinction between benefits and other types of deductions and exemptions that are designed to distribute the tax burden equitably. And you look to the intent of Congress. So for 501c3, you look to the Supreme Court's decision on Bob Jones, which reviews extensively the history of 501c3 tax benefits. Yeah, it was defining what it means to be charitable, right? In part, and the way the court did that is review the history of the 501c3 tax exemptions and deductions. And the court there made clear that the reason that Congress passed the 501c3 tax benefits was to provide aid to recipients. So that's the line that you would draw, is federal financial assistance means anything that Congress does to aid anyone or to aid a certain group? Yes, a benefit that Congress provides to aid the recipient. And I do want to address Section 1682, the word grant, because I think the other side has put a lot of weight on that, and the court was asking about it. We know that can't limit the general definition of financial assistance to funds, because for three main reasons. First, paralyzed veterans tells us that financial assistance, footnote 11 tells us financial assistance is not limited to funds, and that's reflected in the regulations themselves, which include discounts on property the federal government gives and detail of the services of federal personnel. The Affordable Care Act explicitly includes tax credits. That uses the same enforcement provision, 1682. So we know that 1682 must be consistent with the inclusion of some tax benefits within the definition of financial assistance. And the word grant itself is not limited to funds. The Supreme Court and Bob Jones, Alan B. Wright, Waltz, all refer to the grant of a tax exemption. It's completely natural to refer to tax benefits as being something granted. And I want to address Judge Harris' question from earlier about this idea that agencies haven't enforced Title IX, haven't seeked to revoke tax benefits based on Title IX in the past. I think you had a similar situation in the Davis case, where for the entire 30-plus years of Title IX's existence, the agency hadn't defined discrimination to include student-on-student harassment. That wasn't anywhere in the regulations. It wasn't in the legislative history, and it certainly wasn't mentioned separately in the text. But in Davis, the court still held that, you know, even despite this Pennhurst clear notice rule that schools were on notice, that the word discrimination covered deliberate indifference to student-on-student harassment based on the text itself and the Supreme Court's repeated statements that that text is to be read broadly. Thank you. All right. Thank you. Mr. Viola, your rebuttal? Your Honor, other than bringing to the Court's attention that there's been a case subsequent to the briefing, Doe v. Horn, it's a District of Arizona opinion on December 11, 2023. Judge Zips will waive rebuttal. All right. Thank you. We will come down and greet counsel and then finish our third case of the day.
judges: Stephanie D. Thacker, Pamela A. Harris, Allison J. Rushing